UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> HANCOCK DEMOLITION & EXCAVATION CO., LLC, <br><br> Defendant. | Case No. 4:08CV509MLM |

## **MEMORANDUM OPINION**

Before the court is the Motion for Summary Judgment filed by Plaintiffs. Doc. 43. Defendant Hancock Demolition & Excavation Co., LLC, ("Defendant") filed a Response and Plaintiffs filed a Reply. Docs. 44, 45. Also before the court is the Motion for Summary Judgment filed by Defendant. Doc. 37. Plaintiffs filed a Response to Defendant's Motion for Summary Judgment. Doc. 41. Defendant filed a Reply. Doc. 47. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 15.

### **UNDISPUTED FACTS**[1]

Plaintiffs'[2] Complaint is an action to collect allegedly delinquent fringe benefit contributions pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, on behalf of the named Plaintiffs, including the Construction Laborers Welfare Fund (the "Welfare Fund"), the Construction Laborers Pension Trust of Greater St. Louis (the "Pension Trust"), the St. Louis

---

[1] The facts are undisputed unless otherwise stated.

[2] The court shall refer to all named plaintiffs, jointly, as "Plaintiffs."

Vacation Fund - Vacation Plan (the "Vacation Fund"), AGC - Eastern Missouri Laborers Joint Training Fund (the "Training Fund"), their Trustees, and the Laborers International Union of North America, AFL-CIO, Local Union Nos. 42, 53, and 110 (the "Union"). In particular, Plaintiffs allege, among other things, that the Welfare Fund, the Vacation Fund, and the Pension Trust, and the Training Fund (jointly, the "Employee Benefit Funds") are employee benefit plans within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § § 1002(1), (3), 1132, and 1145; that the individually named Plaintiffs are the designated trustees of the Funds and are fiduciaries within the meaning of ERISA, § § 1002(21)(A); that Plaintiffs Local Unions Nos. 42, 53 and 110 are labor organizations representing employees in an industry affecting commerce within the meaning of the National Labor Relations Act, 29 U.S.C. § § 152(4)-(7); and that Defendant is an employer within an industry affecting commerce within the meaning of ERISA, § § 1002(5), (11), (12) and 1145 and the Labor Management Relations Act ("LMRA"), § § 152(2), (6) and (7). In its Answer, Defendant neither admitted or denied these allegations, with the exception that in response to the allegation that Defendant is an employer within the meaning of the LMRA, Defendant asserted that it is a legal conclusion.

In the Complaint Plaintiffs also allege Defendant is bound by the provisions of a collective bargaining agreement requiring monthly payments to the Employee Benefit Funds in specified amounts and the submission of monthly report forms; that the collective bargaining agreement provides that the Trustees of the Employee Benefit Funds shall be permitted to perform a financial examination of Defendant's books and records periodically to insure that payments have been properly made in accordance with the terms of the collective bargaining agreement; that despite repeated requests, Defendant has failed and refused to submit monthly report forms for the period of December 2006 to the present and to submit its books and records for the aforementioned financial

2

examination; that Defendant is required to pay liquidated damages of twenty percent on delinquent contributions; and that Plaintiffs are entitled to recover interest, liquidated damages, costs, accounting fees and reasonable attorneys fees pursuant to ERISA, § 1132(g). Defendant denied these allegations in its Answer. In the Complaint, Plaintiffs request the court to issue an interlocutory order of accounting requiring Defendant to submit its books and records to an accountant to determine the amounts owed to Plaintiffs; that a judgment be entered against Defendant based upon the findings of the audit; and that the court order Defendant to make payments in the future to the Funds in accordance with the terms of the collective bargaining agreement. As an affirmative defense, Defendant has alleged that there is no oral or written collective bargaining agreement between Defendant and any of Plaintiffs.

The collective bargaining agreement (the "Agreement") to which Plaintiffs allege Defendant is a signatory was signed on December 13, 2006, by Harold Rosen. The signatory page states that the employer/company is "Hancock Demolition," Defendant, and that Mr. Rosen was Defendant's registered agent. The signatory page is titled Agreement and states that:

> The undersigned company hereby agrees to and is bound by the 2004-2009 Collective Bargaining Agreement, effective March 1, 2004, between Site Improvement Association and the Eastern Missouri Laborers' District Council and its affiliated Local Unions Nos. 42, 53 and 110, and also agrees to be bound by all subsequent agreements, renewals, changes or extensions thereto made by the original parties, unless notice of termination is given to the Union by the undersigned not less than sixty (60) days nor more than ninety (90) days prior to any termination date. ... .
>
> I hereby acknowledge that I have received a copy of this Agreement.

Difani Aff., Ex. 2.

Mr. Rosen's dated signature appears below the above stated language on the signatory page. In an affidavit, Mr. Rosen states that he has been, for several years, the registered agent for Defendant; that he has never been an member, manager, owner, employee, director, shareholder, or

3

officer of Defendant; that he has been an officer or director of a corporation which has done business with Defendant; that his business with Defendant has involved the making of bids on demolition and/or excavation projects; that when bids on which Mr. Rosen has worked are successful, the corporation of which he is an officer/director receives 10%; that neither Clarence Hancock, Manger of Defendant, nor anyone from Defendant ever authorized Mr. Rosen to execute the Agreement; that neither Mr. Hancock nor anyone else from Defendant ever authorized Mr. Rosen or instructed him to do any act that would bind Defendant to the Agreement; and that Mr. Rosen arranged for a workers' compensation policy which included both Defendant and one of the corporations of which Mr. Rosen was an officer or director. Defendant's Operating Agreement reserves the right to bind the corporation to its Managing Member, Mr. Hancock.

In December 2006 Defendant was performing demolition work in the City of St. Louis in order to prepare for the construction of a Walgreens store. Mr. Rosen had referred this job for Defendant and had placed a bid on its behalf. On about December 13, 2006, Jeff Aboussie, a former business agent and now an employee of the International Union of Operating Engineers, and Pat LoPiccolo, business agent and recording secretary for Laborers Local 53, approached Mr. Hancock, while he was at the Walgreens jobsite, and learned that Defendant was not a signatory to a collective bargaining agreement with any union. Mr. Hancock called Mr. Rosen and asked Mr. Rosen to take Defendant's employee, Demetrius McMillan, who was also on the jobsite, to the Laborers' hall to be signed up; Mr. Rosen then drove Mr. McMillan to the Laborer's hall. After arriving at the hall, Mr. Rosen signed the signature page of the Agreement. Mr. Rosen did not read the Agreement prior to signing the signature page. It is disputed whether Mr. Rosen received a copy of the Agreement.

Also, at the Laborer's hall, Mr. Rosen wrote a personal check for the first half of Mr.

McMillan's Union initiation fee. In January 2007, either Defendant or Mr. Rosen paid the second half of Mr. McMillan's initiation fee.

Mr. LoPiccolo, Laborers Local 43 business agent, testified in a deposition that he was present at the Laborers' hall when Mr. Rosen signed the Agreement; that Mr. Rosen identified himself as Defendant's agent; that prior to Mr. Rosen's signing the Agreement, Mr. Rosen called the hall, spoke to Mr. LoPiccolo, and identified himself as an authorized agent for Defendant; that when Mr. LoPiccolo asked Mr. Rosen if he was authorized to sign a contract, Mr. Rosen responded that he was; that, within a half hour of the phone call Mr. Rosen was at the Laborers' hall; and that prior to Mr. Rosen's signing the Agreement, Mr. LoPiccolo "told him everything that [was] written" in the Agreement. LoPiccolo Dep. at 12-18. Upon further questioning Mr. LoPiccolo testified that he did not recall if Mr. Rosen referred to himself as the "registered" or as the "authorized" agent of Defendant; that he knew that Mr. Rosen wrote "registered" agent on the Agreement; that on the telephone prior to his going to the Laborers' hall Mr. Rosen told Mr. LoPiccolo that he was not an officer of Defendant; that also in this telephone conversation Mr. Rosen told Mr. LoPiccolo that Mr. Hancock "had given [him] the authority to sign contracts as his agent." LoPiccolo Dep. at 27-29.

Appendix A to the Agreement states, in relevant part:

> 3. The subcontractor will, on the Union's request, promptly furnish or make available to the Union copies of such payroll and other records [as are] necessary to verify the subcontractor's compliance with the foregoing Agreement regarding wages and fringe benefits and, at the Union's option and request, will permit the Union's agents or accountants to audit and examine such of the subcontractor's payroll records as necessary to verify compliance, the cost of such audit to be borne by the Union unless the audit discloses underpayment, in which case the cost shall be borne by the subcontractor to the extent of such underpayment unless resulting from inadvertent or immaterial error or clerical mistake.

Difani Aff., Ex. 1, part c.

Wolfe Nilges Nahorski ("WNN") is the Funds' independent accounting firm. On November 1, 2007, WNN mailed Defendant a request to conduct a payroll examination. The letter, with a letterhead, identifying WNN as "CERTIFIED PUBLIC ACCOUNTANTS AND CONSULTANTS," stated, in relevant part, that:

> We have been engaged to conduct an examination on behalf of the St. Louis Construction Laborers Benefit Funds. This examination relates to your payroll and related disbursement records and is intended to verify that fringe benefit contributions have been made in accordance with the collective bargaining agreement.
>
> The examination will include a review of your records for the period December 13, 2006 through the current date.

Massa Aff., Ex. 1.

On April 14, 2008, John Massa, an accountant with WNN, mailed Mr. Hancock a letter confirming that Mr. Hancock had agreed to submit to an audit on April 25, 2008. The letter stated that the audit was in reference to a "Payroll Examination: St. Louis Construction Laborers Benefit Funds" and specified the records which would "be needed for the entire period of the examination." The letter also said that Mr. Hancock should be advised that "the results of this examination will be reported to the Funds referenced above." Massa Aff., Ex. 2.

An audit for the period of December 13, 2006, through March 31, 2008, was performed on Defendant by WNN. Based on this financial examination, Mr. Massa determined that Defendant was delinquent in contributions. Massa Aff., ¶ 6.

In their Motion for Summary Judgment Plaintiffs move for the court to enter judgment in favor of Plaintiffs in the amount of $120,524.86 based on payroll compliance examination for the period from December 13, 2006, through March 31, 2008. In its Motion for Summary Judgment Defendant contends that judgment should be entered in its favor because Mr. Rosen lacked authority to sign the Agreement and because the Agreement is not a contract or otherwise binding as it lacks

consideration, as there was no meeting of the minds, and as it is too vague and ambiguous to be enforceable.

## II.
## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn.& E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not

to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. With these principles in mind, the court turns to an analysis of the parties' motions.

## III.
## LEGAL FRAMEWORK and ANALYSIS

The first issue before the court is whether Mr. Rosen had authority to bind Defendant to the Agreement. Under Missouri law, "[a] principal is responsible for its agents' acts and agreements that are within the agent's authority, whether the authority is actual or apparent." Motorsport Marketing, Inc. v. Wiedmaier, Inc., 195 S.W.3d 492, 498 (Mo. Ct. App. 2006). The Eighth Circuit explained the factors relevant to actual authority under Missouri law in Essco Geometric v. Harvard Industries, 46 F.3d 718, 723-24 (8th Cir. 1995), and held as follows:

> Under Missouri law, for an agent to have actual authority, he must establish that the principal has empowered him, either expressly or impliedly, to act on the principal's behalf. Hyken v. Travelers Ins. Co., 678 S.W.2d 454, 457 (Mo. Ct. App. 1984). The principal can expressly confer authority by telling his agent what to do or by knowingly acquiescing to the agent's actions. Rosenblum v. Jacks or Better of America West, Inc., 745 S.W.2d 754, 760 (Mo. Ct. App. 1988). Implied authority flows from express authority, and "encompasses the power to act in ways reasonably necessary to accomplish the purpose for which express authority was granted." Id. Missouri case law suggests that custom and the relations of the parties establish the parameters of implied actual authority. Barton v. Snellson, 735 S.W.2d 160, 162 n. 2 (Mo. Ct. App. 1987); Molasky Enterprises, Inc. v. Carps, Inc., 615 S.W.2d 83, 87 (Mo. Ct. App.1981); Dudley v. Dumont, 526 S.W.2d 839, 844 (Mo. Ct. App. 1975). Thus, evidence that an agent historically engaged in related conduct, without limitation, would be enough to support a jury question on the issue of actual authority.

See also IOS Capital, L.L.C. v. Allied Home Mortgage Capital Corp., 150 S.W.3d. 148, 151-52 (Mo. Ct. App. 2004) ("Implied authority is actual authority which the principal intended the agent to possess that lacks direct proof, but rather is implied from relevant facts and circumstances as reasonably necessary to accomplish the purpose or purposes of the expressly conferred authority.");

8

Nichols v. Prudential Ins. Co.of America, 851 S.W.2d. 657, 661 (Mo. Ct. App. 1993) ("Express authority is created when the principal explicitly tells the agent what to 'do'... [and] implied authority consists of those powers incidental and necessary to carry out the express authority.").

Evidence of implied actual authority can be derived from an agent's own testimony, from his job description or from custom and practice within an industry. Essco, 46 F.3d at 724 (citing Sappington v. Miller, 821 S.W.2d 901, 904 (Mo. Ct. App. 1992); Barton v. Snellson, 735 S.W.2d 160, 162 n. 2 (Mo. Ct. App. 1987)).

Additionally, under Missouri law, an agent may have apparent authority to bind a principal. Id. at 726. As stated by the Eighth Circuit in Essco, 46 F.3d at 726:

> Under Missouri law, apparent authority is created by the conduct of the principal which causes a third person reasonably to believe that the purported agent has the authority to act for the principal, and to reasonably and in good faith rely on the authority held out by the principal. Beard, 877 S.W.2d at 240; Earl v. St. Louis University, 875 S.W.2d 234, 238 (Mo. Ct. App.1994); Mahoney v. Delaware McDonald's Corp., 770 F.2d 123, 126 (8th Cir.1985). An agent may have apparent authority to act even though as between himself and the principal, such authority has not been granted. Hamilton Hauling, Inc. v. GAF Corp., 719 S.W.2d 841, 846 (Mo. Ct. App.1986). Apparent authority does not arise from the acts of the agent. Beard, 877 S.W.2d at 241.

The difference between apparent and actual authority is that "actual authority is created by the principal's manifestations to the agent," while "apparent authority is created by the principal's manifestations to a third party." Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc., 220 S.W.3d 350, 355 n.4 (Mo. Ct. App. 2007) (citing Nichols v. Prudential Ins. Co. of America, 851 S.W.2d 657, 661-62 (Mo. Ct. App. 1993)). Apparent authority can be created by "the principal['s] expressly and directly telling a third person that a second person has authority to act on the principal's behalf," "by prior acts," and "by position." Essco, 46 F.3d at 1092 (citing Earl v. St. Louis Univ., 875 S.W.2d 234, 238 (Mo. Ct. App. 1994); Hamilton Hauling, Inc. v. GAF Corp., 719 S.W.2d 841, 847 Mo. Ct. App. 1986)). Thus, where a principal allows an agent to carry out prior similar transactions, a

principal creates the appearance that the agent is authorized to carry out such acts subsequently. Id. (citing Earl, 875 S.W.2d at 238). In regard to creating apparent authority by position, "[i]f a principal allows an agent to occupy a position which, according to the ordinary habits of people in the locality, trade or profession, carries a particular kind of authority, then anyone dealing with the agent is justified in inferring that the agent has such an authority." Id. (citing Earl, 875 S.W.2d at 238). Apparent authority can be created by a combination of these factors. See id. ("[A] reasonable jury could conclude that [the principal] created the appearance of authority through a combination of position and prior acts.").

Missouri law also provides that where there is no prior authority to act on the part of an agent, a principal may ratify the agent's conduct so that the principal is bound by the agent's actions. Springfield Land and Dev. Co. v. Bass, 48 S.W.3d 620, 628 (Mo. Ct. App. 2001). ("Ratification in agency is an adoption or confirmation by one person of an act [such as entering into a contract] performed on his behalf by another without authority.") (citing 2A C.J.S. Agency § 63 (1972)). The Missouri appellate court further held in Bass, 48 S.W.3d at 628, as follows:

> "[A]s relates to agency, 'ratification' is an express or implied adoption or confirmation, with knowledge of all material matters, by one person of an act performed on his behalf by another who at that time assumed to act as his agent but lacked authority to do so." Wilks v. Stone, 339 S.W.2d 590, 595 (Mo. App. 1960) (emphasis added) [other citations omitted]. Ratification proceeds upon the assumption that there has been no prior authority and merely constitutes a substitute therefore. Brookfield Prod. Credit Ass'n v. Weisz, 658 S.W.2d 897, 899 (Mo.App.1983). "The existence of agency and the authority of the agent can be and often is implied by proof of facts, circumstances, words, acts, and conduct of the party to be charged." Wilks, 339 S.W.2d at 595. "Probably the most certain evidence of implied ratification is the acceptance and retention of the fruits of the contract with full knowledge of the material facts of the transaction." American Multi-Cinema, 848 S.W.2d at 560 (quoting Wilks, 339 S.W.2d at 596).

In regard to whether Mr. Rosen had actual authority, the undisputed facts do not establish that Mr. Hancock actually authorized Mr. Rosen to sign the Agreement. In regard to whether Mr. Rosen

10

had actual implied authority to sign the Agreement, it is undisputed that Defendant had given Mr. Rosen authority to sign construction contracts. Authority to sign construction contracts, however, differs substantially from authority to sign a collective bargaining agreement. See Essco, 46 F.3d at 726. Also, signing the Agreement was well beyond the parameters of the express authority conferred on Mr. Rosen to sign up Defendant's employee as a Union member. Further, it is undisputed that Mr. Rosen had never been an officer, employee, member, shareholder or director of Defendant. Plaintiffs contend, and Defendant denies, that Mr. Rosen has been a manager or owner of Defendant. In support of their position Plaintiffs argue that because Mr. Rosen refers work to Defendant, receives a 10% profit of work he refers to Defendant, has placed bids, signed contracts, submitted invoices, and acquired permits on Defendant's behalf, that Mr. Rosen is "essentially" and owner and/or manager of Defendant. Doc. 42, Pls. Resp. Def. Facts, ¶ 1. The court finds that this conduct of Mr. Rosen does not establish that Mr. Rosen was an owner or a manager of Defendant. Indeed, among other things, it is disputed whether Mr. Rosen told Mr. LoPiccolo that he was Defendant's registered or authorized agent; it is disputed whether Mr. Rosen was given a copy of the Agreement at the time he signed the Agreement; and it is disputed what Mr. LoPiccolo told Mr. Rosen he was signing and the effects thereof. As such, the court finds that there are genuine issues of material fact in regard to whether Mr. Rosen had actual authority to sign the Agreement.

In regard to whether Mr. Rosen had apparent authority to sign the Agreement, as stated above, how Mr. Rosen held himself out to the Union is not the determinative factor; rather, Defendant's "manifestations" to Plaintiffs' is the relevant consideration. See Hardcore Concrete, 220 S.W.3d at 355 n.4. While Mr. Hancock expressly and directly told Mr. Rosen to sign up the employee, the record does not reflect whether Mr. Hancock expressly or directly told a representative of Plaintiffs that Mr. Rosen had the authority to sign a collective bargaining agreement. Further, the

11

record does not reflect whether Mr. Hancock told a representative of Plaintiffs that Mr. Rosen had the authority to act on Defendant's behalf. The only authority that he conferred on Mr. Rosen, which the undisputed facts establish that Mr. Hancock manifested to Plaintiffs' representatives in regard to Defendant's relationship with Plaintiffs, was to take Defendant's employee to the Union hall so the employee could sign up as a Union member. The court finds, therefore, that there are genuine issues of material fact in regard to whether Mr. Rosen had apparent authority to sign the Agreement.

Nonetheless, after Mr. Rosen signed the Agreement, Mr. Hancock permitted WNN to conduct an audit on behalf of the Funds. To the extent that Mr. Hancock asserts he did not know the purpose of the audit, the letters from WNN made it clear that the purpose of the audit was to determine amounts due by Defendant to the Funds. It is undisputed that the Agreement states that a signatory employer must permit Plaintiffs' accountants to perform financial examinations of the employer's records for purposes of insuring that payments are made in accordance with the terms of the Agreement. The court finds that, as such, the undisputed facts establish that Mr. Hancock, on behalf of Defendant, ratified Mr. Rosen's allegedly unauthorized conduct of binding Defendant to the terms of the Agreement by his permitting WNN to conduct an audit. Bass, 48 S.W.3d at 628. The court finds, therefore, that Defendant is bound by the terms of the collective bargaining agreement.

To the extent that Defendant contends that the Agreement is not a binding contract, the Eighth Circuit holds that collective bargaining agreements "are not governed by the common law concepts which govern private agreements." Darnel v. East, 573 F.2d 534, 537 (8th Cir. 1978) (citing Transportation-Communication Employees Union v. Union Pac. R.R. Co., 385 U.S. 157, 160-61(1966)). See also Southwest Adm'rs, Inc. v. Rozay's Transfer, 791 F.2d 769, 775 (9th Cir. 1986) ("For reasons of public policy, traditional contract law does not apply with full force in actions brought under [ERISA] to collect delinquent trust fund contributions."). As such, collective

bargaining agreements are enforced "without question as to consideration." Darnel, 573 F.2d at 537. The court notes, however, that Defendant did receive a benefit from becoming a signatory to the Agreement because by doing so it avoided picketing of the Walgreen's jobsite. To the extent Defendant contends that the Agreement is unenforceable because there was not meeting of the minds, as stated above traditional contract law principals do not apply to enforcement of collective bargaining agreements. Even fraud in the inducement on the part of a union is no defense. See Southwest Adm'rs, Inc. v. Rozay's Transfer, 791 F.2d 769, 775 (9th Cir. 1986). While "fraud in the execution" may be a valid defense to the enforcement of a collective bargaining agreement, to establish such fraud an employer/signatory must establish "'excusable ignorance of the contents of the writing signed.'" Id. (quoting Uniform Commercial Code § 3-305 comment 7). Indeed, the signatory page acknowledges that Mr. Rosen received a copy of the Agreement. As such, the court finds Defendant's arguments that the Agreement is not enforceable because it lacks consideration, because there was no meeting of the minds, and because it is too vague and ambiguous are without merit. See id.; Darnel, 573 F.2d at 537.

To the extent Defendant argues that the Agreement is not enforceable or binding because its employees did not actually ever join Local 53, the Agreement at issue is a pre-hire construction industry collective bargaining agreement. The LMRA provides that such agreements are enforceable even if the signatory union has not obtained majority approval among eligible workers. See 29 U.S.C. § 158(f). See e.g., Local Union 257, IBEW, AFL-CIO v. Sebastian Elec., 121 F.3d 1180, 1185 (8th Cir. 1997). Until the expiration of a pre-hire construction industry collective bargaining agreement, a union is entitled to a presumption of majority status. See id. The court finds, therefore, that the Agreement is an enforceable collective bargaining agreement and that Defendant is bound by its terms and conditions.

**RELIEF**

There is no question that under ERISA Plaintiffs are entitled to recover from Defendant unpaid contributions, interest or liquidated damages, and attorneys' fees. See ERISA, 29 U.S.C. § 1132(g)(2).[3] In their Motion for Summary Judgment Plaintiffs request that the court enter judgment for a specific amount. The court finds, however, that Defendant should be afforded the opportunity to either accept or challenge Plaintiffs' calculations. As such, the court finds that there remains a genuine issue of material fact as to the amount which Defendant owes. The court orders, therefore, that if Plaintiffs determine that an additional audit is necessary, no later than fourteen (14) days from the date of this Memorandum Opinion, Plaintiffs shall request that Defendant submit to an audit; that such audit be conducted within thirty (30) days from the date Plaintiffs make such a request; that within thirty (30) days of the audit, Plaintiffs submit a bill of accounting to Defendant and to the court specifying the amounts which Defendant owes; that within thirty (30) days of the date Defendant

---

[3] ERISA, 29 U.S.C. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of--
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

receives Plaintiffs bill of accounting, Defendant shall either pay Plaintiffs or file objections with the court; and that within fourteen (14) days of Defendant's filing objections, Plaintiffs shall file a Reply. In the event Plaintiffs determine that further accounting is not necessary, no later than fourteen (14) days from the date of this Memorandum Opinion, Plaintiffs shall file with the court, and serve on Defendant, a bill of accounting, detailing the calculations of amounts Defendant allegedly owes; that within thirty (30) days of the date Plaintiffs file the bill of accounting, Defendant may file a Response; and that within ten (10) days of Plaintiffs' filing a Response, Defendant may file a Reply.

## CONCLUSION

For the reasons more fully set forth above, the court finds that the undisputed facts establish that Defendant is bound by the terms of the Agreement. The court further finds that there remains a genuine issue of material fact as to the amount Defendant owes the Funds pursuant to the terms of the Agreement. As such, the court finds that Plaintiffs' Motion for Summary Judgment should be granted, in part, and denied, in part. The court also finds that Defendant's Motion for Summary Judgment should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Plaintiffs is **GRANTED**, in part, and **DENIED**, in part; Doc. 34

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendant is **DENIED**; Doc. 37.

**IT IS FURTHER ORDERED** that Plaintiffs shall submit to the court a bill of accounting in accordance with the procedures set forth above.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER

UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of August, 2009.